CHRISTOPHER ROGERS o/b/o )
ESTATE OF CHRISTINE ROGERS, )
 )
   Plaintiff, )
  v. )   CIVIL ACTION
 )   NO. 13-10196-JGD
COMMISSIONER OF SOCIAL )
SECURITY, )
 )
   Defendant. )

## MEMORANDUM OF DECISION AND ORDER
## ON CROSS-MOTIONS REGARDING DENIAL OF
## SOCIAL SECURITY DISABILITY INSURANCE BENEFITS

March 28, 2014

DEIN, U.S.M.J.

## I. INTRODUCTION

 The plaintiff, Christopher Rogers ("Mr. Rogers" or "plaintiff"), is the former

husband of Christine Rogers ("Ms. Rogers" or "claimant"), who died on October 23,

2012.  He has brought this action on behalf of Ms. Rogers' estate, pursuant to sections

205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), in

order to challenge the final decision of the Commissioner of the Social Security

Administration (the "Commissioner") denying Ms. Rogers' claim for Social Security

Disability Insurance ("SSDI") benefits.  The matter is presently before the court on the

plaintiff's "Motion to Reverse" (Docket No. 18) ("Pl. Mot."), by which Mr. Rogers is

seeking an order vacating the Commissioner's decision and remanding the matter to the

Social Security Administration for further administrative proceedings. It is also before the court on the "Defendant's Motion for Order Affirming Decision of the Commissioner" (Docket No. 25), by which the Commissioner is seeking an order upholding her decision to deny Ms. Rogers' claims for benefits. At issue is whether the Administrative Law Judge ("ALJ"), in reaching his decision that Ms. Rogers was not disabled, erred by finding that Ms. Rogers' diagnosis of aortic insufficiency did not constitute a "severe" impairment, and that Ms. Rogers' impairments did not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Social Security regulations. Also in dispute is whether the ALJ committed reversible error by failing to adopt the opinion of a state agency consultant that Ms. Rogers had the residual functional capacity to stand and/or walk for only 3 to 4 hours in an 8-hour work day, and by failing to incorporate that limitation into the hypothetical question that he posed to the vocational expert at the administrative hearing on Ms. Rogers' claim for benefits.

As described below, this court finds that while substantial evidence supports the ALJ's determination that Ms. Rogers' aortic insufficiency was not severe, the plaintiff's remaining claims of error support a remand to the Social Security Administration. Accordingly, and for all the reasons detailed herein, the Commissioner's motion to affirm is DENIED, the plaintiff's motion to reverse is ALLOWED, and the matter is hereby remanded to the Commissioner for further proceedings consistent with this Memorandum of Decision and Order.

## II. <u>STATEMENT OF FACTS</u>[1]

The claimant, Ms. Rogers, was born on April 16, 1964, and was 47 years old at the time of her hearing before the ALJ. (Tr. 35, 164). Prior to her death in October 2012, Ms. Rogers was married to the plaintiff and had three adult children. (See Tr. 13, 35). She also held a GED, and had been employed as a truck driver for a linen company during the time period from about 2005 to 2009. (Tr. 35, 37, 197). According to Ms. Rogers, she stopped working on July 24, 2009, after her physical condition deteriorated and she became too weak to perform the heavy lifting required to perform her job. (See Tr. 37, 196).

The record reveals that Ms. Rogers had a history of alcohol abuse, which persisted for over 20 years. (Tr. 36-37, 436, 581, 583). On February 12, 2010, following a period in which she developed jaundice and experienced increasing weakness, fatigue, confusion, and abdominal pain, the claimant was admitted to Cape Cod Hospital and diagnosed with hepatic encephalopathy, end stage liver disease, cirrhosis and malnutrition. (Tr. 291-92, 333, 341-42, 459). Tests performed during her hospital stay revealed that she also had a severe aortic insufficiency and an electrolyte abnormality, and that she was suffering from asthma, a urinary tract infection, and thrush. (Tr. 341, 459). Although Ms. Rogers ultimately died of cardiovascular collapse due to sepsis caused by a

---

[1] References to pages in the transcript of the record proceedings shall be cited as "Tr. __." The ALJ's decision shall be cited as "Dec." and can be found beginning at Tr. 18.

perforated colon, she claimed that her end stage liver disease and aortic insufficiency caused her to become disabled from working. (See Tr. 13, 196).

## Procedural History

Ms. Rogers filed an application for SSDI benefits on February 23, 2010, claiming that she had been unable to work since July 24, 2009 due to end stage cirrhosis and a hole in her heart. (Tr. 164-70, 192, 196). She later amended the alleged onset date of her disability to December 1, 2009. (Tr. 37). Ms. Rogers' application was denied initially in June 2010, and upon reconsideration in February 2011. (Tr. 86-91, 99-104).

The claimant subsequently requested and was granted a hearing before an ALJ, which took place by video teleconference on December 8, 2011. (Tr. 32-57, 106-22; see also Dec. 1; Tr. 18). Ms. Rogers, who was represented by counsel, appeared and testified at the hearing. (Tr. 32-50). Additionally, the ALJ elicited testimony from a vocational expert ("VE"), who described the claimant's vocational background based on her past work experience and responded to hypothetical questions designed to determine whether jobs exist in the national economy for an individual with the same age, educational background, past work experience and residual functional capacity ("RFC") as the claimant. (Tr. 52-54). The plaintiff contends that the hypothetical question, which the ALJ posed to the VE, did not accurately reflect all of Ms. Rogers' functional limitations, and that therefore, the ALJ's reliance on the VE's response to that question was improper. For the reasons detailed below, this court agrees that the ALJ's description of

the claimant's RFC was not based on substantial evidence and rendered the VE's testimony unreliable.

Specifically, during the hearing, the ALJ asked the VE to consider a hypothetical individual having a similar age, education and vocational background as the claimant who "is limited to light work, who can occasionally perform postural maneuvers; due to asthma should avoid concentrated exposure to fumes, dust, gas, odors, and who should avoid hazards." (Tr. 52). The VE testified that such an individual would not be able to perform Ms. Rogers' past work as a linen truck driver, but that a claimant with those limitations would be able to perform certain light, unskilled jobs, including the jobs of parking cashier, usher or ticket taker, and cafeteria attendant. (Tr. 52-53). The VE also testified that there are 76,180 parking cashier jobs in Massachusetts and 1,376,000 nationally; 2,380 usher or ticket taker jobs in Massachusetts and 16,000 nationally; and 9,990 cafeteria attendant jobs in Massachusetts and 148,000 nationally. (Id.).

After the VE responded to the ALJ's hypothetical question, the claimant's counsel was given an opportunity to examine the VE. (Tr. 53-54). Ms. Rogers' attorney asked the VE whether jobs would be available for a hypothetical claimant who had the same limitations as those described by the ALJ, except that the claimant would not be able to stand for a total of 6 hours throughout an 8-hour work day. (Tr. 53). The VE testified that the added limitation would eliminate both the cafeteria attendant job and the usher/ticket taker job. (Id.). He also testified that while it would not necessarily eliminate the parking cashier job because many of those positions have a sit-stand option, it would

significantly reduce the number of jobs that were available.  (Id.).  Thus, as the VE

explained, "you'd have to reduce that number significantly, but it's still a pretty -- it was

a very robust number because, you know, like at the state level, 76,000.  So it would still

be a considerable number."  (Id.).  However, the VE did not provide a specific number or

attempt to describe precisely what he meant by "a considerable number."  (See id.).

On January 9, 2012, the ALJ issued a decision denying Ms. Rogers' claim for

benefits, and the claimant filed a request for review of the ALJ's decision by the Social

Security Appeals Council.  (Tr. 14; Dec. 10; Tr. 27).  However, before the Appeals

Council had an opportunity to render a decision, Ms. Rogers passed away.  (See Tr. 11-

13).  Consequently, Mr. Rogers was substituted as the party pursuing the claim for

benefits.  (See id.).

On December 3, 2012, the Appeals Council denied Ms. Rogers' request for

review, but it subsequently set aside that decision in order to consider a brief that had

been filed by the plaintiff's counsel.  (See Tr. 1-10).  On March 15, 2013, after con-

sideration of counsel's arguments, the Appeals Council again denied Ms. Rogers' request

for review, thereby making the ALJ's decision the final decision of the Commissioner for

purposes of review.  (Tr. 1-5).  Therefore, the plaintiff has exhausted all of his adminis-

trative remedies, and the case is ripe for review pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3).

## The ALJ's Decision

The ALJ concluded that from December 1, 2009[2] through the date of his decision on January 9, 2012, Ms. Rogers had not been "under a disability, as defined in the Social Security Act," which defines "disability" as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." (Dec. 1-2, Finding #11; Tr. 18-19, 27). See also 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). There is no dispute that the ALJ, in reaching his decision, applied the five-step sequential evaluation required by 20 C.F.R. §§ 404.1520. The procedure resulted in the following analysis, which is detailed in the ALJ's "Findings of Fact and Conclusions of Law." (See Dec. 3-10; Tr. 20-27).

The first inquiry in the five-step process is whether the claimant is "engaged in substantial gainful work activity[.]" Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001). If so, the claimant is automatically considered not disabled and the application for benefits is denied. See id. In the instant case, the ALJ determined that Ms. Rogers had not engaged in such activity since December 1, 2009, the alleged onset date of her disability.

_____

[2] Although the ALJ acknowledged that the claimant had amended the alleged onset date of her disability from July 24, 2009 to December 1, 2009, he wrote in his decision at Finding #11 that "[t]he claimant has not been under a disability, as defined in the Social Security Act, *from July 24, 2009,* through the date of this decision (20 CFR 404.1520(g))." (See Dec. 1, Finding #11; Tr. 27 (emphasis added)). Because there is no dispute that the alleged onset date was December 1, 2009, and the ALJ acknowledged that fact elsewhere in his written decision, this court has assumed that the July date set forth in Finding #11 was an oversight, and that the ALJ meant to use the amended date.

(Dec. Finding #2; Tr. 20).  Therefore, he proceeded to the next step in the sequential analysis.

The second inquiry is whether the claimant has a "severe impairment," meaning an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]"  20 C.F.R. §§ 404.1520(c).  If not, the claimant is considered not disabled and the application for benefits is denied. See Seavey, 276 F.3d at 5.  Here, the ALJ concluded that Ms. Rogers suffered from several severe impairments, including alcohol abuse, cirrhosis of the liver, and asthma. (Dec. Finding #3; Tr. 21).  The plaintiff claims that the ALJ erred by failing to find that the claimant's aortic insufficiency also constituted a severe impairment.

## Discussion Regarding the Claimant's Aortic Insufficiency

In connection with his finding at step two in the evaluation process, the ALJ acknowledged that during her hospitalization in February 2010, Ms. Rogers was given an echocardiogram, which revealed the existence of aortic insufficiency.  (Dec. 4; Tr. 21). Nevertheless, he determined that her heart condition did not rise to the level of a severe impairment within the meaning of the Social Security regulations.  (Id.).  As the ALJ explained in his written decision:

> [w]ith the exception of her aortic valve issue, the remaining clinical and diagnostic evidence regarding the claimant's heart is largely benign.  The claimant's March 2010, July 2010, and November 2010 chest x-rays were within normal limits (Ex. 15F *and* Ex. 16F). Similarly, the claimant's March 2010 electrocardiogram (EKG) was within normal limits (Ex. 8F).  Additionally, the record documents consistently benign heart examinations.  On March 16 and July 27,

2010, the claimant was noted to have normal first (S1) and second (S2) heart sounds (Ex. 8F).  On May 2010, the claimant's cardiovascular exam was benign with exception of "the expected cardiac murmur."  (Ex. 5F *and* Ex. 7F).  Additionally, the record does not document any recurrent complaints of cardiovascular symptoms.  On July 27, 2010, the claimant denied any palpitations or dyspnea on exertion (Ex. 8F).  On May 20 and August 6, 2010, the claimant denied any cardiovascular symptoms (Ex. 5F).  At hearing, the claimant did not testify to any ongoing treatment or medications for her heart condition.

(Id.).  Thus, the ALJ concluded that there was "no evidence to suggest that the claimant['s] aortic valve impairment more than minimally limit[ed] her ability to perform work-related activities," and found that the condition was not severe for purposes of her claim for SSDI benefits.  (Id.).

<u>Details Regarding the Step Three Analysis</u>

Because the ALJ determined that Ms. Rogers suffered from a number of severe impairments, he proceeded to step three in the sequential analysis.  The third inquiry is whether the claimant has an impairment equivalent to a specific list of impairments contained in Appendix 1 of the Social Security regulations, in which case the claimant would automatically be found disabled.  <u>See</u> <u>Seavey</u>, 276 F.3d at 5; 20 C.F.R. § 404.1520(a)(4)(iii).  At this step, the ALJ concluded that Ms. Rogers' impairments, either alone or in combination, did not meet or medically equal any of the listed impairments.  (Dec. Finding #4; Tr. 22).  The parties dispute whether this finding was supported by substantial evidence.

In support of his finding at step three, the ALJ explained that he had given little weight to the opinion of Alberto Tonelli, M.D., a consultant for the University of Massachusetts Medical School Disability Evaluation Services ("DES"), that Ms. Rogers' impairments equaled the criteria of Listing 5.08 pertaining to weight loss due to any digestive disorder. (Dec. 5; Tr. 22; <u>see also</u> Tr. 566-67). According to the ALJ, the record did not document multiple calculations of Ms. Rogers' body mass index ("BMI") below 17.50 within any consecutive six month period, and did not indicate that the claimant lost weight as a result of a digestive disorder. (<u>Id.</u>). The ALJ also noted that the most recent height and weight measurements contained in the record showed that the claimant was 5'2" tall and weighed 151 pounds, which gave her a BMI of 27.6. (<u>Id.</u>). Therefore, he specifically declined to adopt Dr. Tonnelli's opinion that Ms. Rogers' impairments were medically equal to Listing 5.08. (<u>Id.</u>).

After explaining the basis for rejecting Dr. Tonnelli's opinion, the ALJ considered whether Ms. Rogers' impairments met or equaled the criteria of Listing 5.05 for chronic liver disease. (<u>Id.</u>). Because he found that there was no evidence of hepatic hemor-rhaging; that the claimant's ascites and encephalopathy largely resolved and did not reoccur following the surgical insertion of a transjugular intrahepatic portosystemic shunt; and that "the claimant's laboratory results [did] not meet the listing's enumerated criteria[,]" the ALJ concluded that Ms. Rogers' impairments did not meet or medically equal Listing 5.05. (<u>Id.</u>; <u>see also</u> Dec. 6; Tr. 23). As described below, the record

indicates that the ALJ reached this conclusion without adequately considering all of the available laboratory data. Therefore, the matter must be remanded for further evaluation.

<u>The Step Four Analysis</u>

After finding that Ms. Rogers' impairments did not meet or equal any of the listed impairments, the ALJ proceeded to step four in his analysis. The fourth inquiry asks whether "the applicant's 'residual functional capacity' is such that he or she can still perform past relevant work[.]" <u>Seavey</u>, 276 F.3d at 5. In the instant case, the ALJ determined as follows with respect to Ms. Rogers' RFC:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CRF 404.1567(b)[3] and the claimant can: frequently lift ten pounds or less and can occasionally lift twenty pounds or less; can occasionally climb, balance, stoop, kneel, crouch, and crawl; must avoid concentrated exposure to fumes, odors, dusts, and gasses; and must avoid concentrated exposure to hazards, such as moving machinery and unprotected heights.

(Dec. Finding #5; Tr. 22). This is the same RFC that was included in the ALJ's hypothetical question to the VE. (<u>See</u> Tr. 52). The plaintiff contends that this finding was not supported by substantial evidence because it was inconsistent with the only RFC assess-

---

[3] 20 C.F.R. § 404.1567(b) defines "light work" as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

ment contained in the record which, in addition to the above, included a finding that Ms. Rogers could only stand and/or walk for 3 to 4 hours over the course of an 8-hour workday.

In reaching his conclusion regarding the claimant's RFC, the ALJ first considered all of Ms. Rogers' symptoms and the extent to which those symptoms were consistent with the objective medical evidence and other evidence in the record. (Dec. 5-7; Tr. 22-24). Thus, the ALJ reviewed the claimant's medical records, which consisted of records covering the time period from February 12, 2010 through November 17, 2011. (Dec. 6-7; Tr. 23-24). He also considered statements that Ms. Rogers made at the hearing regarding the effects that her impairments had on her ability to work and carry out day-to-day activities, and her refusal to stop drinking despite her doctors' advice that she do so. (Dec. 7; Tr. 24). Because the ALJ determined that Ms. Rogers' medically determinable impairments could reasonably be expected to cause the alleged symptoms, he went on to determine whether her subjective statements about the limiting effects of her symptoms were credible in light of the entire record. (See Dec. 5, 7; Tr. 22, 24). The ALJ concluded that in Ms. Rogers' case, "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." (Dec. 7; Tr. 24).

Significantly, after describing the basis for his conclusion regarding the claimant's credibility, the ALJ noted that the record contained no opinions from any of Ms. Rogers' treating physicians regarding the claimant's functional limitations, and stated that he had

given "considerable weight" to the opinion of Dr. Jane Matthews, a non-examining state agency consultant, in connection with his finding that Ms. Rogers was capable of performing light work.  (Dec. 8; Tr. 25).  On June 22, 2010, Dr. Matthews completed a physical RFC assessment in which she opined that the claimant could lift 20 pounds occasionally and 10 pounds frequently; could stand and/or walk for 3 to 4 hours in an 8-hour workday; could sit for about 6 hours in an 8-hour workday, and had no limitations on her ability to push and/or pull.  (Tr. 479).  She also determined that Ms. Rogers could occasionally climb, balance, stoop, kneel, crouch and crawl, and that she should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and hazards such as machinery and heights.  (Tr. 480, 482).  The ALJ found that Dr. Matthews' assessment was well-supported by the objective medical evidence, and was consistent with the record as a whole.  (Dec. 8; Tr. 25).  However, he failed to explain why he did not adopt Dr. Matthews' opinion that Ms. Rogers could only stand and/or walk for 3 to 4 hours over the course of an 8-hour workday even though Dr. Matthews was the only medical expert who rendered an opinion regarding the claimant's RFC.  (See id.).  For the reasons detailed below, this court finds that the ALJ erred by failing to account for this limitation in his decision.

Following his discussion concerning the claimant's RFC, the ALJ concluded that Ms. Rogers was unable to perform her past work as a truck driver.  (Dec. Finding #6; Tr. 26).  Consequently, the ALJ reached the fifth and last step in the sequential analysis.

## The ALJ's Decision at Step Five

The fifth inquiry is whether, given the claimant's RFC, education, work experience and age, the claimant is capable of performing other work. See Seavey, 276 F.3d at 5; 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. 20 C.F.R. § 404.1520(g). At step five, the Commissioner has the burden "of coming forward with evidence of specific jobs in the national economy that the applicant can still perform." Seavey, 276 F.3d at 5. Here, the ALJ relied on the VE's testimony, in response to his hypothetical question, that a person with Ms. Rogers' age, education, prior work experience and RFC would be able to perform the requirements of unskilled work at the light exertional level, including such jobs as a parking attendant, ticket taker and cafeteria attendant. (Dec. 9-10; Tr. 26-27). Accordingly, the ALJ found that the claimant was capable of performing work that exists in significant numbers in the national economy, and that Ms. Rogers was not disabled. (Dec. 10; Tr. 27). The ALJ did not address the VE's testimony reducing the number of available jobs when the factors raised by Ms. Rogers' counsel were considered.

Additional factual details relevant to this court's analysis are described below where appropriate.

## III. ANALYSIS

### A. Standard of Review

The plaintiff is seeking judicial review of the Commissioner's "final decision" pursuant to the Social Security Act § 205(g), 42 U.S.C. § 405(g) (the "Act"). The Act provides in relevant part that:

> Any individual, after any final decision of the Commissioner of
> Social Security made after a hearing to which he was a party,
> irrespective of the amount in controversy, may obtain a review of
> such decision by a civil action .... The court shall have power to
> enter, upon the pleadings and transcript of the record, a judgment
> affirming, modifying, or reversing the decision of the Commissioner
> of Social Security, with or without remanding the cause for a re-
> hearing. The findings of the Commissioner of Social Security as to
> any fact, if supported by *substantial evidence*, shall be conclusive....

42 U.S.C. § 405(g) (emphasis added). The Supreme Court has defined "substantial

evidence" to mean "more than a mere scintilla. It means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." Richardson v.

Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting

Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126

(1938)); accord Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st

Cir. 1991).

It has been explained that:

> In reviewing the record for substantial evidence, we are to keep in
> mind that "issues of credibility and the drawing of permissible
> inference from evidentiary facts are the prime responsibility of the
> [Commissioner]." The [Commissioner] may (and, under his
> regulations, must) take medical evidence. But the resolution of
> conflicts in the evidence and the determination of the ultimate
> question of disability is for him, not for the doctors or for the courts.
> We must uphold the [Commissioner's] findings in this case if a
> reasonable mind, reviewing the record as a whole, could accept it as
> adequate to support his conclusion.

Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981) (quoting

Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). Thus,

"the court's function is a narrow one limited to determining whether there is substantial evidence to support the [Commissioner's] findings and whether the decision conformed to statutory requirements." Geoffroy v. Sec'y of Health & Human Servs., 663 F.2d 315, 319 (1st Cir. 1981). The Commissioner's decision must be affirmed, "even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987).

"Even in the presence of substantial evidence, however, the Court may review conclusions of law, and invalidate findings of fact that are 'derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts[.]'" Musto v. Halter, 135 F. Supp. 2d 220, 225 (D. Mass. 2001) (quoting Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam)) (internal citations omitted). "Thus, if the ALJ made a legal or factual error, the court may reverse or remand such decision to consider new, material evidence or to apply the correct legal standard." Ross v. Astrue, Civil Action No. 09-11392-DJC, 2011 WL 2110217, at *2 (D. Mass. May 26, 2011) (internal citation omitted).

### B. Failure to Find That the Claimant's Aortic Insufficiency Was Severe

The plaintiff argues that the Commissioner's decision to deny Ms. Rogers' claim for SSDI benefits must be reversed and remanded because the ALJ erroneously concluded that the claimant's aortic insufficiency was not a severe impairment. (Pl. Mot. at 4). "At Step 2, the claimant has the burden of proving, through objective medical evidence, that

her impairments are severe." Teves v. McMahon, 472 F. Supp. 2d 82, 86 (D. Mass. 2007). Under the Social Security regulations, "[a]n impairment . . . is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." Id. (quoting 20 C.F.R. § 404.1521(a)). Here, the ALJ determined that there was "no evidence to suggest that the claimant['s] aortic valve impairment more than minimally limit[ed] her ability to perform work-related activities[.]" (Dec. 4; Tr. 21). Because his decision on this matter was supported by substantial evidence in the record, this court finds that it must be upheld.

As the ALJ described in detail in his written decision, both the medical evidence and the other evidence of record indicate that Ms. Rogers' heart condition was largely benign. For example, x-rays and other medical evaluations concerning the claimant's heart were consistently unremarkable and generated results that were within normal limits, with the exception of a cardiac murmur. (Id.; see also Tr. 447, 479, 503, 506, 514, 615, 629, 649, 769). The record also supports the ALJ's observation that Ms. Rogers had no recurrent complaints of cardiovascular symptoms, and his finding that during the hearing Ms. Rogers testified that she had not undergone any procedures for her heart condition. (Dec. 4; Tr. 21; see also Tr. 38, 436, 450). In fact, although Ms. Rogers indicated in May 2010 that she would be willing to see a cardiologist, (see Tr. 436), there is no evidence showing that she ever pursued such treatment. See Kosinski v. Astrue, Civil Action No. 10-30097-KPN, 2011 WL 3678836, at *4 (D. Mass. Aug. 19, 2011) (noting that a "lack of or gaps in medical treatment may be considered evidence when

determining the severity and scope of a disability"). Accordingly, there is substantial support for the ALJ's conclusion that Ms. Rogers' heart-related impairment was not severe within the meaning of the Social Security regulations.

The plaintiff does not take issue with the evidence relied upon by the ALJ in support of his finding that the claimant's aortic sufficiency was not severe. Nevertheless, he contends that the record shows that Ms. Rogers' heart condition resulted in medically assessed functional limitations. (Pl. Mot. at 4-5). Specifically, the plaintiff argues that Dr. Matthews, the state agency consultant who completed the only RFC assessment of record, characterized Ms. Rogers' aortic insufficiency as "severe," and relied on that impairment to support her opinion that Ms. Rogers had certain exertional limitations, including a restriction on her ability to stand and/or walk for more than 3 to 4 hours in an 8-hour workday. (See id.; Pl. Opp. Mem. (Docket No. 27) at 1-2). Accordingly, he contends that the claimant met her burden of showing that the condition was severe for purposes of her claim for benefits, and that the ALJ's finding was improper.

This court finds that Dr. Matthews' opinion does not undermine the ALJ's decision at step two in the sequential analysis. In her RFC assessment, Dr. Matthews noted that Ms. Rogers "was found to have severe [aortic insufficiency] on echocardiogram." (Tr. 479). However, the fact that Dr. Matthews described Ms. Rogers' aortic insufficiency as "severe" does not amount to a determination that it limited her ability to perform basic work activities. Dr. Matthews' RFC assessment was based on a review of the available medical records, and her description of the claimant's heart

condition as severe merely parroted the language used by the medical providers who diagnosed the condition based on the results of the echocardiogram. (See id.; see also Tr. 261-62). By using the word "severe" to describe the diagnosis, it does not appear that Dr. Matthews was purporting to opine on the severity of Ms. Rogers' aortic insufficiency for purposes of her claim for SSDI benefits. (See Tr. 479).

The fact that Dr. Matthews considered Ms. Rogers' aortic insufficiency in connection with her assessment of the claimant's RFC also is not sufficient to establish the existence of a severe impairment. "A mere diagnosis of a condition 'says nothing about the severity of the condition.'" White v. Astrue, Civil Action No. 10-10021-PBS, 2011 WL 736805, at *6 (D. Mass. Feb. 23, 2011) (quoting Higgs v. Bown, 880 F.2d 860, 863 (6th Cir. 1988)). Consequently, Dr. Matthews' recognition that Ms. Rogers had been diagnosed with aortic insufficiency, without more, does not suggest that it limited the claimant's ability to perform work-related tasks. Moreover, under the Social Security regulations, both severe and non-severe impairments must be considered in assessing the impact of a claimant's impairments on her ability to engage in work-related activities. See 20 C.F.R. § 404.1523 (stating that the Commissioner, in determining whether the claimant's impairment or impairments are of a sufficient medical severity to support a claim for benefits, "will consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity"). In her assessment, Dr. Matthews made no effort to link the claimant's aortic insufficiency with any specific functional limitations or to determine

how that condition, standing alone, would have impacted the claimant's RFC. (See Tr. 478-85). Therefore, the plaintiff has not shown that Dr. Matthews' opinion was at odds with the ALJ's decision at step two in his analysis.

Even if Dr. Matthews did believe that the claimant's aortic insufficiency consti- tuted a severe impairment as defined in the Social Security regulations, "the resolution of conflicts in the evidence and the drawing of conclusions from such evidence are for the [Commissioner]." Irlanda Ortiz, 955 F.2d at 769. As described above, the ALJ gave good reasons, based on evidence in the record, for his conclusion that Ms. Rogers' heart condition did not "significantly limit" her ability to perform basic work activities. See 20 C.F.R. § 404.1521(a). Accordingly, this court finds that his decision on this issue was appropriate and must be upheld.

In any event, this court agrees with the Commissioner's assertion that any error with respect to this matter would have been harmless. Because the ALJ found that Ms. Rogers had at least one severe impairment, he was required to consider all of her impairments, "including [any] medically determinable impairments that [were] not 'severe,'" when assessing her RFC at step four in the analytical process. 20 C.F.R. § 404.1545(a)(2). Therefore, his failure to find that her aortic insufficiency was severe for purposes of step two did not relieve him of the obligation to consider any limiting effects of that condition in connection with his disability determination, and would not

justify a reversal even if it had constituted error.[4]  See Noel v. Astrue, C.A. No. 11-cv-30037-MAP, 2012 WL 2862141, at *6 (D. Mass. Jul. 10, 2012) (finding that any error that ALJ made by finding that plaintiff's anxiety was not a severe impairment was harmless in light of ALJ's obligation to consider all of plaintiff's impairments in assessing his RFC); Perez v. Astrue, Civil Action No. 11-30074-KPN, 2011 WL 6132547, at *4 (D. Mass. Dec. 7, 2011) (finding that any error at step two was harmless where "ALJ explicitly considered 'all symptoms,' both severe and non-severe, in assessing Plaintiff's residual functional capacity"), and cases cited.

### C.    Existence of a Listed Impairment

Mr. Rogers' next challenge concerns the ALJ's determination, at step three of the sequential analysis, that the claimant's impairments did not meet or medically equal one of the impairments listed in Appendix 1 of the Social Security regulations.  The plaintiff contends that the ALJ only arrived at his decision at this stage by ignoring critical evidence, including statements that were made by Dr. Tonelli in support of his determination that Ms. Rogers' impairments equaled the criteria for Listing 5.08

---

[4]  This court rejects the plaintiff's assertion that any error at step two was not harmless because the ALJ improperly "failed to include Dr. Matthews' assessed standing limitation in the RFC finding" and failed to credit the VE's testimony that such a limitation would have precluded Ms. Rogers from performing the jobs of ticket taker and cafeteria attendant.  (Pl. Mot. at 5).  As described above, the ALJ was obligated to consider all of Ms. Rogers' impairments, both severe and non-severe, in assessing her RFC at step four.  To the extent he failed to adopt Dr. Matthews' opinion regarding the existence of limitations on the claimant's ability to stand, and to include such a limitation in his hypothetical question to the VE, it was not due to any error that he made at step two.  Rather, it was due to his failure to properly assess the limiting effects of her combined impairments at step four in the sequential analysis.

pertaining to weight loss due to a digestive disorder, and laboratory results relating to the claimant's end stage liver disease. (See Pl. Mot. at 6-7; Pl. Opp. Mem. at 3-5). Accordingly, he claims that the ALJ "committed serious error" at step three, and that his decision must be remanded. (Pl. Mot. at 6). While this court finds that the ALJ's decision to reject Dr. Tonelli's opinion was supported by substantial evidence, it concludes that the ALJ erred by failing to consider various laboratory results as interpreted by an expert. Therefore, the matter will be remanded for further consideration of that evidence.

## Rejection of Dr. Tonelli's Opinion

As described above, Dr. Tonelli, a consultant for DES, determined that Ms. Rogers' impairments medically equaled Listing 5.08. (See Tr. 559-67). That Listing is included among the listings pertaining to disorders of the digestive system, and specifically provides as follows:

> 5.08 *Weight loss due to any digestive disorder* despite continuing treatment as prescribed, with BMI of less than 17.50 calculated on at least two evaluations at least 60 days apart within a consecutive 6-month period.

20 C.F.R. Pt. 404, Subpt. P., App. 1 § 5.08. In support of his conclusion that Ms. Rogers' impairments equaled Listing 5.08, Dr. Tonelli relied on medical evidence from the claimant's hospitalization in February 2010 during which she was diagnosed with cirrhosis of the liver. (See Tr. 566-67). He specifically noted, among other things, that Ms. Rogers had arrived at the hospital appearing "thin and frail, extremely jaundiced, and

fatigued[,]" and having trouble with ambulation. (Tr. 566). Additionally, Dr. Tonelli found that Ms. Rogers "appears to have end stage liver disease that is expected to last 12 [months,]" that she appeared very debilitated, and that abstinence from alcohol was "very unlikely." (Tr. 567). He further concluded that Ms. Rogers' limitations would continue at the same level of severity for at least 12 months from the date of onset. (Id.).

In rejecting Dr. Tonelli's opinion, the ALJ determined that the record contained no evidence showing that Ms. Rogers had "any significant issues with digestive disorder induced weight loss" or that her BMI met the criteria of Listing 5.08. (See Dec. 5; Tr. 22). This court finds that there was substantial support for his conclusion. Although the record indicates that the claimant was suffering from severe malnutrition at the time of her admission to the hospital in February 2010, it also demonstrates that physicians were able to correct that problem with the introduction of a hepatic diet and nutrition counseling. (See, e.g., Tr. 327-32, 341-42). Thus, the medical evidence shows that the claimant's BMI rose above the 17.50 threshold set forth in the Listing even before she was discharged from the hospital in March 2010, and that it continued to remain well above that level over the course of the following months. (See, e.g., Tr. 324 (showing a BMI of 21.5801 as of 3/15/10), 437 (showing a BMI of 20.6 on 5/20/10), 452 (showing a BMI of 22.0 on 8/6/10), 460 (showing a BMI of 21.9 on 3/11/10)). In fact, by November 2010, Ms. Rogers weighed 151 pounds and had a BMI of 27.6. (Tr. 583). Therefore, Dr. Tonelli's prediction that the claimant would experience the same level of severity for at least 12 months is undermined by the subsequent medical records, and the ALJ

appropriately determined that her impairments were not disabling per se under Listing 5.08.

The plaintiff does not challenge the ALJ's conclusion that Ms. Rogers failed to meet the criteria of Listing 5.08. Nevertheless, he argues that the ALJ improperly ignored Dr. Tonelli's opinion that her impairments were medically equal to the Listing. As the plaintiff reasons:

> In rejecting Dr. Tonelli's opinion, the ALJ cited the specific criteria necessary to meet Listing 5.08. In so doing, the ALJ ignored Dr. Tonelli's opinion that the claimant's impairment equaled Listing 5.08 *due to decreased muscle mass*, as well as weight loss. Dr. Tonelli also cited the claimant's *frailty, difficulty with ambulation, and fatigue* in support of his finding that the listing was equaled. Thus, the ALJ simply ignored the *actual* bases upon which Dr. Tonelli determined equivalency.

(Pl. Opp. Mem. at 3 (citations omitted); see also Pl. Mot. at 6).

The plaintiff's claim of error on this matter is unpersuasive. As an initial matter, there is nothing in the ALJ's decision to suggest that he ignored Dr. Tonelli's opinion or that he failed to consider the basis for that opinion. The ALJ specifically acknowledged Dr. Tonelli's opinion and recognized Dr. Tonelli's view that Ms. Rogers' impairments *equaled* the criteria of Listing 5.08. (Dec. 5; Tr. 22 (emphasis added)). Therefore, it appears that he reviewed that opinion and considered Dr. Tonelli's comments. Moreover, there was nothing improper about the ALJ's focus on the criteria of Listing 5.08. As described above, the Listing specifically concerns "[w]eight loss due to any digestive disorder" and requires multiple BMI calculations below 17.50. 20 C.F.R. Pt. 404, Subpt.

P, App. 1 § 5.08. It was entirely appropriate for the ALJ to reject Dr. Tonelli's opinion based on evidence that Ms. Rogers continued to gain weight and to increase her BMI throughout the relevant time period.

In any event, the plaintiff has not shown how Dr. Tonelli's comments about Ms. Rogers' decreased muscle mass, frailty, difficulty walking and fatigue support a conclusion that her impairments equaled the relevant Listing. "An impairment equals a listed impairment when the set of symptoms, signs and laboratory findings in the medical evidence supporting the claimant are at least equivalent in severity to the set of medical findings for the listed impairment." <u>Martinez Nater v. Sec'y of Health & Human Servs.</u>, 933 F.2d 76, 77 (1st Cir. 1991) (quotations and citation omitted). Here, the plaintiff has failed to explain how the symptoms listed by Dr. Tonelli equate with weight loss due to a digestive disorder or with multiple BMI calculations of less than 17.50 within a consecutive 6-month period. <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 5.08. Therefore, he has not established that the ALJ's decision on this matter was improper.

<b><u>Failure to Find an Alternate Listing</u></b>

The plaintiff also asserts that the ALJ committed error by failing to properly consider whether the medical evidence supported an alternate listing. (Pl. Mot. at 6-7). In his decision, the ALJ did consider whether Ms. Rogers' impairments met or equaled the criteria of Listing 5.05 for chronic liver disease, but found that the medical evidence, including the claimant's laboratory results, did not satisfy the relevant criteria. (Dec. 5; Tr. 22). However, for the reasons that follow, this court finds that the ALJ's decision in

this regard was not supported by substantial evidence, and that the plaintiff's motion to reverse and remand should be allowed on this basis.

The record shows that on May 20, 2010, Dr. Matthews, the state agency consultant, wrote that Ms. Rogers "may very well meet a Listing," but that in order to make a final determination she would need "MER over 60 days apart within a 6 month period" including "labs after 4/12/10." (Tr. 80). The record also shows that Dr. Matthews was able to review the claimant's laboratory results from May 22, 2010 before completing her assessment of the claimant's RFC, but that additional laboratory data obtained after April 12, 2010, including laboratory results from July 2010 and November 2011, were subsequently added to the record. (See Tr. 519-21, 640-46, 754-60, 766-67, 770-73). There is no dispute that Dr. Matthews did not have an opportunity to review the additional data prior to completing her RFC assessment on June 22, 2010. (See Tr. 478-85). Nor has the Commissioner pointed to evidence showing that another medical expert reviewed the results to determine whether they would have met or medically equaled a listed impairment.

As a general matter, "an ALJ, as a lay person, is not qualified to interpret raw data in a medical record." Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996). To the extent the ALJ evaluated the laboratory results on his own and determined that they failed to satisfy the criteria of Listing 5.05, it was not appropriate for

him to do so.[5]  To the extent he neglected to consider some or all of the data, that too

would have been inappropriate, particularly in light of Dr. Matthews' suggestion that Ms.

Rogers "may very well meet a listing."  See also Musto, 135 F. Supp. 2d at 225 (stating

that the court may "invalidate findings of fact that are 'derived by ignoring evidence'"

(quoting Nguyen, 172 F.3d at 35)).  "Social Security proceedings are inquisitorial rather

than adversarial" and "[i]t is the ALJ's duty to investigate the facts and develop the

arguments both for and against granting benefits."  Sims v. Apfel, 530 U.S. 103, 110-11,

120 S. Ct. 2080, 2085, 147 L. Ed. 2d 80 (2000).  Accordingly, this court finds that a

remand is warranted so that all of the relevant laboratory data may be reviewed by a

medical expert.

The Commissioner's arguments do not alter this court's conclusion.  The

Commissioner first asserts that the plaintiff's motion to reverse on this basis should be

denied because he neglected to identify the particular listing that the claimant may have

met, and has therefore failed to satisfy his burden of proof at step three of the sequential

analysis.  (Def. Mem. (Docket No. 26) at 14).  The Commissioner is correct that it is "the

claimant's burden to show that [s]he has an impairment or impairments which meets or

equals a listed impairment in Appendix 1" of the Social Security regulations.  Torres v.

---

[5]  The ALJ indicated that he considered the laboratory results from November 2011.  (See
Dec. 8; Tr. 25).  However, there is no evidence indicating whether he reviewed the laboratory
data from July 2010.  Records from a walk-in visit that Ms. Rogers made to Lisa Zandonella-
Huhta, M.D. in November 2010 indicate that the claimant's laboratory results from July 2010
were abnormal.  (See Tr. 585).  There is no mention of those results in the ALJ's decision.  (See
Dec. 6-8; Tr. 23-25).

Sec'y of Health & Human Servs., 870 F.2d 742, 745 (1st Cir. 1989). However, this court disagrees that the claimant failed to identify a particular listing. Although the plaintiff did not cite a specific listing in his motion, the claimant's counsel identified the relevant listing at the hearing before the ALJ. At that time, the claimant's counsel asked the ALJ to send Ms. Rogers out for a consultative examination, or at least interpret her recent blood work, to "see whether she does meet the listing for liver failure." (Tr. 54-55). This was adequate to alert the ALJ that the data might satisfy Listing 5.05, and the ALJ specifically considered that Listing at step three in his analysis.

To the extent the Commissioner contends that the plaintiff failed to produce any evidence to support a finding that the claimant met the Listing for chronic liver disease, this court finds that this argument too is unconvincing. During the hearing, Ms. Rogers' counsel requested and obtained permission from the ALJ to leave the record open so that he could submit additional medical evidence from Cape Cod Hospital, including records reflecting recent blood work that could demonstrate the existence of a listed impairment. (See id.). The record indicates that such medical evidence was submitted, and that the ALJ had an opportunity to consider it, along with earlier laboratory data from July 2010, in order to determine whether the claimant's impairments met the criteria of Listing 5.05. (See Tr. 519-21, 640-46, 754-60, 766-67, 770-73).

The Commissioner also argues that by the time Dr. Matthews completed her RFC assessment, she had determined that Ms. Rogers did not satisfy a listing. In particular, the Commissioner emphasizes the fact that Dr. Matthews reviewed Ms. Rogers'

laboratory results from May 22, 2010. (Def. Mem. at 14-15; <u>see</u> <u>also</u> Tr. 479-80). She reasons that Dr. Matthews' consideration of data generated after April 12, 2010, "and her finding that the Claimant could engage in work above the sedentary exertion level strongly suggests that she no longer believed that it was possible that the Claimant met a listing." (Def. Mem. at 15).

While the Commissioner's interpretation of Dr. Matthews' opinion is consistent with the record, it does not resolve the question whether the additional laboratory results that were submitted after the completion of Dr. Matthews' RFC assessment support the existence of a listed impairment. Because the ALJ, as a lay person, was not qualified to assess whether those results satisfied the criteria of Listing 5.05 on his own, and the Commissioner has not pointed to any evidence indicating that they were reviewed by a medical expert, this court finds that his decision at step three, that "the claimant's laboratory results do not meet the listing's enumerated criteria[,]" was not supported by substantial evidence. (<u>See</u> Dec. 5; Tr. 22).

### D. <u>Adequacy of the RFC Assessment</u>

The plaintiff also takes issue with the ALJ's finding regarding Ms. Rogers' RFC. He contends that the ALJ committed error both by relying on Dr. Matthews' written assessment of the claimant's RFC in the first place, and then by failing to adopt Dr. Matthews' opinion that Ms. Rogers could stand and/or walk for only 3 to 4 hours in an 8-hour workday. (Pl. Mot. at 7-9). Because this court finds that the ALJ erred by

substituting his own views for those of Dr. Matthews, the plaintiff's motion for a remand will be allowed on this basis as well.

**Reliance on Dr. Matthews' Assessment**

In connection with his determination of the claimant's RFC, the ALJ gave "considerable weight" to Dr. Matthews' opinion that Ms. Rogers was capable of performing a range of light work. (Dec. 8; Tr. 25). The plaintiff argues that his decision in this regard was improper. According to Mr. Rogers, "Dr. Matthews' opinion was based on a materially incomplete record" because "she was unable to review the subsequent laboratory results that she indicated were required to determine whether Ms. Rogers' impairments met [a] listing." (Pl. Mot. at 8). Therefore, he asserts that the opinion could not provide substantial evidence to support the ALJ's finding regarding the claimant's RFC. (Id.).

The plaintiff's argument is inconsistent with evidence in the record showing that Dr. Matthews reviewed laboratory results after April 12, 2010 before completing her RFC assessment. (See Tr. 479-80). As described above, Dr. Matthews specifically considered laboratory data from May 22, 2010, and relied on that data to support her opinion that Ms. Rogers retained the capacity to perform a limited range of light work. (Id.). Thus, while this court agrees with the plaintiff's assertion that the laboratory results submitted after the date of Dr. Matthews' RFC assessment should have been reviewed by a medical expert to determine whether they met the criteria of Listing 5.05 for chronic liver disease, he has not shown that the ALJ would have been precluded from relying on Dr. Matthews'

opinion if, after such review, he had determined that it was necessary to proceed to step four in the disability analysis.

**<u>Failure to Adopt Limitation on Standing or Walking</u>**

Although the ALJ gave "considerable weight" to the opinion of Dr. Matthews, his finding regarding Ms. Rogers' RFC was not fully consistent with Dr. Matthews' assessment. While he agreed with Dr. Matthews' assessment in all other respects, the ALJ did not adopt her opinion that the claimant could stand and/or walk for only 3 to 4 hours in an 8-hour workday. (<u>Compare</u> Dec. Finding #5; Tr. 22 <u>with</u> Tr. 479-82). Instead, he determined that she could perform the standing and walking requirements associated with the full range of light work, which involve "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6 (S.S.A.). This court finds that his finding in this regard was improper.

It is undisputed that Dr. Matthews' opinion constituted the only RFC assessment that was provided by a medical source. None of Ms. Rogers' treating physicians des-cribed her limitations in functional terms, and no other state agency consultant provided an alternative assessment.[6] An ALJ "[is] not at liberty to ignore medical evidence or substitute [her] own views for uncontroverted medical opinion." <u>Nguyen</u>, 172 F.3d at 35. Nor is an ALJ qualified to assess a claimant's RFC based solely on the medical record. <u>Id.</u> (explaining that the ALJ is "simply not qualified to interpret raw medical data in

---

[6] On February 3, 2011, Swaran Goswami, M.D., a state agency consultant, affirmed Dr. Matthews' RFC without completing a separate RFC assessment. (Tr. 68).

functional terms"); <u>Berrios Lopez v. Sec'y of Health & Human Servs.</u>, 951 F.2d 427, 430 (1st Cir. 1991) ("Since bare medical findings are unintelligible to a lay person in terms of residual functional capacity, the ALJ is not qualified to assess claimant's [RFC] based on the bare medical record.").  By finding that Ms. Rogers retained the capacity to perform the standing and walking required to carry out the full range of light work, the ALJ impermissibly substituted his own views for Dr. Matthews' uncontroverted opinion that the claimant would only be able to stand and/or walk for 3 to 4 hours in an 8-hour workday.

The Commissioner argues that any error resulting from the ALJ's failure to incorporate Dr. Matthews' standing and walking limitation into his RFC assessment was harmless because the claimant's counsel effectively "cured this error when he presented a hypothetical RFC to the VE that was substantially similar to the one found by Dr. Matthews."  (Def. Mem. at 16-17).  As the Commissioner explains, the claimant's counsel asked the VE whether the jobs he had identified in response to the ALJ's hypothetical would be available if Ms. Rogers were unable to stand or walk for 6 hours in an 8-hour workday, and the VE testified that the only job that would remain would be the job of parking cashier.  (<u>Id.</u> at 17; <u>see also</u> Tr. 53).  The VE also testified that although he would need to reduce the number significantly, there would still be "a very robust number" of such jobs remaining.  (<u>Id.</u>).  The Commissioner notes that although the VE did not provide a specific number, he had "previously testified that there were 76,180 parking cashier jobs in Massachusetts and 1,376,000 nationally."  (Def. Mem. at 17).

Therefore, the Commissioner argues that "the number of parking cashier jobs that exist should be considered substantial by any standard" and that there were a significant number of jobs in the national economy that the claimant could perform. (Id.).

At step five in the analytical process, the Commissioner must provide evidence that the claimant can still perform work that exists in significant numbers in the national economy. See Seavey, 276 F.3d at 5. While the question is a close one, this court finds that the VE's testimony was too ambiguous to satisfy this requirement. Although the VE stated that "a very robust number" of parking cashier jobs would remain, and that the number would be "considerable," he did not attempt to define what he meant in numerical terms. (See Tr. 53). Accordingly, this court is unable to conclude that the ALJ's decision was based on substantial evidence.

The Commissioner points out that another court in this district has found that a job with 3,600 positions in the state and 15,500 positions in the national economy is sufficient to constitute a substantial number of jobs and support a finding that the claimant is not disabled. (See Def. Mem. at 17 (citing Green v. Astrue, Civil Action No. 11-11711-PBS, 2013 WL 636962, at *12 (D. Mass. Feb. 20, 2013)). However, it is not clear that the VE had such numbers in mind when he responded to the question from Ms. Rogers' counsel. Therefore, this court is not convinced that the ALJ's error at step four was harmless.[7]

_____

[7] The plaintiff argues that the ALJ also erred at step four by failing to obtain testimony from an expert at the hearing to explore whether Ms. Rogers' aortic insufficiency contributed to

### E.    The Step 5 Analysis

The plaintiff's final challenge involves the ALJ's conclusions at step five of the analytical process. At that stage, the ALJ credited the VE's testimony that an individual with Ms. Rogers' age, education, work experience and RFC would be able to perform the jobs of parking attendant, ticket taker and cafeteria attendant. (Dec. 9-10; Tr. 26-27). He relied on that testimony to support his conclusion that there were a significant number of jobs in the national economy that Ms. Rogers could perform, and that she was not under a disability for purposes of the Social Security Act. (Id.). The plaintiff contends that this finding was not supported by substantial evidence because it was based on a hypothetical question that did not accurately convey the claimant's physical limitations. (Pl. Mot. at 10-11).

"The opinion of a vocational expert that a Social Security claimant can perform certain jobs qualifies as substantial evidence at the fifth step of the analysis." Sousa v. Astrue, 783 F. Supp. 2d 226, 235 (D. Mass. 2011). "In order to be substantial evidence, however, the opinion of the vocational expert must be in response to a hypothetical that accurately describes the claimant's limitations." Id. In the instant case, the ALJ relied on the VE's response to a hypothetical question that failed to incorporate the 3 to 4 hour

---

the cardiovascular collapse that occurred at her death, and to determine the relationship between her complaints of abdominal and gastric symptoms and her perforated colon, which led to her death. (Pl. Mot. at 9). However, the claimant died on October 23, 2012, more than nine months after the ALJ issued his decision. (See Tr. 13). Therefore, the circumstances of her death, including the medical conditions that occurred in connection with her death, were not part of the record before the ALJ, and the ALJ had no obligation to conduct any such investigation.

standing limitation set forth in Dr. Matthews' RFC assessment. For the reasons described above, that hypothetical was not based on substantial evidence, and the Commissioner has not shown that the error was harmless. For this reason as well, the matter should be remanded for further administrative proceedings.

## IV. CONCLUSION

For all the reasons detailed herein, the "Defendant's Motion for Order Affirming Decision of the Commissioner" (Docket No. 25) is DENIED and the plaintiff's "Motion to Reverse" (Docket No. 18) is ALLOWED. The matter will be remanded to the Commissioner for further proceedings consistent with this Memorandum of Decision and Order.

    / s / Judith Gail Dein
Judith Gail Dein
U.S. Magistrate Judge